# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Megan DiMercurio and Modern Roots, Inc., | Court File No. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Modern Roots Life, LLC, Joshua Truex, and Sarah Truex, | |
| Defendants. | |

Plaintiffs Megan DiMercurio ("DiMercurio") and Modern Roots, Inc. ("Modern Roots"), by and through their undersigned counsel, for their Complaint ("Complaint") against Defendants Modern Roots Life, LLC ("MRL"), Joshua Truex ("Mr. Truex"), and Sarah Truex ("Ms. Truex") (collectively, "Defendants") hereby allege as follows:

## INTRODUCTION

1.     Starting in 2011 as a small business at local farmer's markets hoping to provide relief to others who suffered the same kind of skincare symptoms as her young daughter, DiMercurio founded Modern Roots to become the successful small business it is today. Modern Roots began selling its products online nationwide in 2013, and it has grown a highly successful online business paired with four brick-and-mortar locations. Over the last several years, however, Modern Roots has been plagued by calls from consumers complaining about a different Modern Roots—Modern Roots Life, an LLC operated by a husband-and-wife pair who once lived near the Ozarks in the Missouri but have since moved to Arkansas. In 2021, the Truexes began to parlay their apparent

ministerial work into the sale of magnesium lotions (a product Plaintiffs have sold for many years), lotions, serums, mineral salts, and numerous other products (including a male enhancement product). Plaintiffs wish to stop this consumer confusion and have repeatedly contacted Defendants to try to resolve the dispute. Those pleas have fallen on deaf ears, though, and consumers continue to be confused by Defendants' use of the phrase "Modern Roots Life." This action follows.

## PARTIES

2.      Plaintiff Modern Roots is a Minnesota corporation with its principal place of business in Buffalo, Minnesota. Modern Roots sells its products through its store locations in Minnesota, Montana, and Idaho, as well as via its website throughout the United States.

3.      Plaintiff Megan DiMercurio is an individual residing in Minnesota. She is the sole owner of Modern Roots.

4.      Defendant MRL is a limited liability company registered in the State of Missouri with a principal office address of 350 Deer Run Road, Branson, MO 65616. MRL's registered agent with the State of Missouri is 350 Deer Run Road, Branson, MO 65616. On information and belief, MRL direct its sale of products throughout the United States and sells products through its website throughout the United States.

5.      Defendant Joshua Truex is an individual residing in Faulkner County, Arkansas. Mr. Truex is the registered agent for MRL. On information and belief, Mr. Truex is a manager of MRL.

6.      Defendant Sarah Truex is an individual residing in Faulkner County,

2

Arkansas. Mr. Truex is the organizer of MRL. On information and belief, Ms. Truex is a manager of MRL.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1338 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Venue lies in this District under 28 U.S.C. § 1391(b) and (c).

8.      This Court has personal jurisdiction over Defendants. Defendants have purposefully, continuously and systematically conducted business in Minnesota by, *inter alia*, advertising, promoting and selling their air bed mattress products in Minnesota. Defendants' advertising, promotion and selling is conducted primarily through their website accessible at the domain name modernrootslife.com, their Facebook page available at the domain facebook.com/modernrootslife, their Instagram account available at the domain instagram.com/modernrootslife, and through Mr. Truex's TikTok page with the username "templemaintenancejosh" with the display name "Modern Roots Life," through which Defendants offer for sale and sell products to Minnesota residents by making deceptive and misleading statements and by infringing Modern Roots' trademarks. Defendants thus transact business over the internet with Minnesota residents, enter into contracts with Minnesota residents via the internet, and collect payment for products from Minnesota residents via the internet. Defendants have willfully engaged in unauthorized, false and misleading uses of Modern Roots' trademarks, which has caused and continues to cause harm to Modern Roots, a Minnesota resident. Defendants continue to engage in unauthorized, false and misleading use of Modern Roots' trademarks even

after the nature of these uses have been brought to Defendants' attention by Modern Roots.

## FACTUAL BACKGROUND

**A. *Modern Roots begins business in Minnesota in 2011.***

9.     In the early 2000s, Modern Roots' founder Megan DiMercurio's daughter was born with a severe skin disorder. Looking for a solution, Ms. DiMercurio and her family began to raise goats and use their milk to handcraft skincare products for her daughter.

10.     DiMercurio began to sell her products to the broader public in 2011, when she made her first commercial sale at the Buffalo, Minnesota farmer's market. Her products included skincare products as well as products formulated using magnesium.

11.     In 2014, DiMercurio registered her corporation, Modern Roots, to do business in the state of Minnesota.

12.     Under the business name Modern Roots, DiMercurio also began to sell products online beginning in early 2014 at the domain modernroots.org. Modern Roots has had robust internet sales dating back to 2014.

13.     In September 2014, Modern Roots opened its first brick-and-mortar location in Buffalo, Minnesota, followed by locations in Stillwater, Minnesota in October 2015, Wayzata, Minnesota in December 2016, and Coeur d'Alene, Idaho in September 2023.

14.     Today, Modern Roots continues to sell skincare products and products using magnesium as it has for many years, including at its four store locations, as well as

through its website.

15.     DiMercurio is the owner of all rights in the trademark Modern Roots Natural Soaps & Body Care®, including United States Registration No. 7,791,473, a true and correct copy of which is attached hereto as **Exhibit A** ("the Modern Roots Trademark").

16.     Additionally, Plaintiffs have a patent pending for magnesium lotions.

17.     Modern Roots markets its products through extensive advertising in, *inter alia* social media platforms, radio, billboards, and word of mouth.

18.     As a result of the innovation and quality of its products, together with the advertising and promotion thereof, Modern Roots has acquired a reputation for quality, integrity, and innovation.

19.     As a result of the use of the Modern Roots Trademark in connection with the advertising and promotion of its Modern Roots products and services, Modern Roots has developed substantial goodwill and recognition in the Modern Roots Trademark.

**B.  *Defendants begin to infringe Modern Roots' marks.***

20.     On or about December 13, 2021, Mr. Truex registered the limited liability company, Modern Roots Life LLC ("MRL"), in the state of Missouri.

21.     Ms. Truex is the "organizer" of MRL.

22.     On information and belief, Mr. and Ms. Truex are the managers of MRL.

23.     On information and belief, Mr. and Ms. Truex formed MRL for the improper purpose of shielding themselves from personal liability arising from the iilegla, infringing, misleading, and deceptive acts alleged herein.

24.    On information and belief, Mr. and Ms. Truex were personally involved in, controlled, directed, and directly participated in Defendants' infringing conduct alleged herein.

25.    On information and belief, Mr. and Ms. Truex supplied MRL with the infringing advertising alleged herein and have the ultimate authority to direct the infringing conduct.

26.    On information and belief, also in 2021, Mr. Truex and Ms. Truex began selling products including magnesium lotions, mineral salt, skincare serums, and skincare lotions under the name Modern Roots Life.

27.    In 2021, Defendants adopted the name Modern Roots Life on their

Facebook page, a current version of which is shown below:



28.    A screenshot from Defendants' website, shown below, displays by way of

example some of their magnesium and lotion products:



29.     The products sold by Defendants—in particular their magnesium products, skincare products, lotions, and serums—compete directly with Modern Roots' products.

30.     Defendants, through their website, sell numerous other products, as shown in the below screenshot from modernrootslife.com:



31.     At the time that Defendants Mr. and Ms. Truex adopted the mark "Modern Roots Life" in 2021, they knew about Plaintiffs' senior use of the Modern Roots Trademark.

32.     Defendants use of the unregistered phrase "Modern Roots Life" is confusingly similar to the Modern Roots Trademark.

33.     Defendants own no trademark rights in "Modern Roots," "Modern Roots Life," or any confusingly-similar derivation thereof.

**C. *Modern Roots attempts to advise Defendants of their infringement in 2024.***

34.     In or around February 2024, Modern Roots and Ms. DiMercurio became aware of MRL's Facebook page and became concerned that MRL was infringing the Modern Roots Trademark Rights.

35.     On or around March 15, 2024, Plaintiffs' counsel sent a letter to Defendants advising Defendants of their violations of Plaintiffs' rights and asking them to cease and desist using Plaintiffs' marks, including any confusingly-similar derivation thereof. This

letter was sent by U.S. mail to 350 Deer Run Rd., Branson, MO 65616 and by email to josh@modernrootslife.com.

36.    Plaintiffs sent this correspondence to josh@modernrootslife.com because the MRL website stated: "Josh answers most all of the messages, so please do not think he is ignoring you because it took a few days to respond. We do our very best to respond ASAP. Thanks!"

37.    Having received no response to the March 15, 2024 correspondence, or on about June 24, 2024, Plaintiffs' counsel sent a second cease-and-desist letter and reattached the first letter to Defendants via email to josh@modernrootslife.com as well as by FedEx and certified U.S. mail to 350 Deer Run Rd., Branson, MO 65616.

38.    Thereafter, Defendants Mr. Truex and Ms. Truex began sending aggressive, unfounded emails and leaving voicemails for Plaintiffs' counsel, despite also advising Plaintiffs' counsel that they were represented by an attorney who would be in contact regarding Plaintiffs' allegations.

39.    For examples, on or around June 24, 2024, Mr. Truex wrote in an email from the email account josh@modernrootslife.com:

> Your story is twisted and incorrect and shows your due dilligence [sic] has not been done on this matter. Do not pursue this, you have no case and I have thousands of posts and all to prove my history in this industry. I was the top personal trainer in the world for big corporate companies in 2010 and started my own physical therapy techniques in 2011, your client has not been in this industry nearly as long as I have and fortunately I've documented all my career on social media so your claims have no valid weight.

40.     Regardless of Mr. Truex's experience as a personal trainer, Defendants did not begin using the phrase "Modern Roots Life" in connection with the sale of products until 2021.

41.     By way of another example, on or around June 24, 2024, Ms. Truex wrote in an email:

> This company has been ongoing under the health and fitness umbrella since 2011. We are HEALTH AND FITNESS based offering other services such as nutrition coaching, personal training, Pilates instruction, foam rolling and maintenance recovery. Your clients [sic] business is completely separate from the services we provide. Our first online sales consisted of detox/herbal flushes and grounding kits.
>
> As many other trademark business names are out there, Modern Roots Catering, Modern Roots Realty, Modern Roots Scratch Kitchen, Thee Modern Roots, and Modern Roots boutique to name a few, we also have hydra - hydra peak, hydra flask, petco, pet smart, united postal service, united airlines, the United States corporation of America, to name a few more. You are infringing on our life and right to do business and in turn if you write or continue to harass us we will file a cease and desist order with the court and will also take steps to sue should you continue to push this process. Please provide proof of cease and desist letters to these businesses as well.
>
> This business is a private 508c1a ministry as well and you are also infringing on the people we serve, provide for and take care of through our ministry.
>
> I am sorry if you're [sic] client feels we are in the wrong, but by the Father as our witness we are doing no wrong here, completely unaware of your clients [sic] business and former letters/email sent.
>
> Thank you for bringing this to our attention as we will make the necessary steps to trademark our business and also make it completely private.

42.     First, Ms. Truex's email does not acknowledge Defendants' sale of products—including magnesium products, skincare, lotions, and serum—which compete

with Plaintiffs' products in connection with the phrase "Modern Roots Life," which is confusingly similar to the Modern Roots Trademark.

43.    Further, Plaintiffs have not asked other companies who do not provide competitive products to cease and desist using any marks that are confusingly similar to the Modern Roots Trademark (nor need they, to otherwise enforce their rights).

44.    Additionally, it is unclear how Defendant could be selling products and services for a profit in connection with a "private 508c1a ministry."

45.    Finally, Plaintiffs have engaged in no harassment of Defendants.

46.    Plaintiffs have merely sent several letters advising Defendants of their unlawful and unauthorized conduct and have asked them to cease doing so.

47.    It is, rather, Defendants whose conduct is harassing.

48.    Because Defendants had stated they were represented, Plaintiffs' counsel did not communicate directly with Defendants.

49.    Thereafter, however, Defendants continued to communicate with Plaintiffs' counsel and stated that they did not in fact have an attorney and were not represented.

50.    Therefore, on or around August 7, 2024, Plaintiffs' counsel sent one last communication via email and certified U.S. mail attempting to resolve the dispute and explain why Plaintiffs' rights are senior.

51.    Plaintiffs received no response via email thereafter.

52.    Plaintiffs' certified U.S. mail letter to Defendants was returned as "Return to Sender – Unable to Forward," and identified a new address for Mr. and Ms. Truex in Conway, Arkansas.

53.    Therefore, on or around September 10, 2024, Plaintiffs' counsel re-sent the August 7 correspondence to Defendants' apparent new address in Conway, Arkansas.

54.    On or around September 26, 2024, the letter that was re-sent to the new Arkansas address was returned to Plaintiffs' counsel with a handwritten note that it was "Refused," shown below:



55.    On information and belief, Mr. or Ms. Truex wrote "Refused" on this correspondence, knowing it was coming from Plaintiffs' counsel.

56.    Defendants are willfully disregarding Plaintiffs' rights.

**D. *Defendants' infringement has caused actual confusion among consumers, which Defendants know about and encourage.***

57.    Defendants' use of the phrases "Modern Roots" and "Modern Roots Life" in connection with their sale of lotions, serums, and magnesium products is likely to cause consumer confusion between their business and Plaintiffs' business.

58.    Indeed, Defendants' use of the phrases "Modern Roots" and "Modern Roots Life" in connection with their sale of lotions, serums, and magnesium products has caused consumer confusion.

59.     For example, in or around July 2024, Modern Roots received several phone calls from customers who were confused because they were not able to locate certain Modern Roots products on the MRL website and were confused about from which entity they were purchasing.

60.     Additionally, by way of another example, in or around November 2024, a woman named Diana Rothman contacted Modern Roots because she had placed an order for products in September 2024 and had never received the products. Modern Roots determined during that call that Ms. Rothman had in fact purchased products from Defendants and was confused.

61.     Around fall of 2024, Modern Roots received several similar calls form customers who were confused between Modern Roots and MRL.

62.     Again in or around January 3, 2025, a person named Zach Parr called Modern Roots' Buffalo, Minnesota store and stated that he placed an order with Modern Roots on "their TikTok shop." Mr. Parr provided his contact and order information but Modern Roots had no order for him in its system; Modern Roots then determined that Mr. Parr was confused between Modern Roots and MRL.

63.     On or around October 25, 2025, a woman named Colene Garcia called MRL because she did not receive a product that she had ordered from them and was dissatisfied. Defendants then gave Ms. Garcia Modern Roots' phone number to call if she was dissatisfied.

64.     Ms. Garcia then called Modern Roots and provided her order information.

65.     Modern Roots determined that Ms. Garcia did not place an order with Modern Roots, and that MRL was attempting to send away an angry customer by blaming Modern Roots.

66.     Defendants know that they are causing confusion between their business and products and Plaintiffs'.

67.     Defendants intend to cause confusion between their business and products and Plaintiffs'.

68.     Defendants operate domain names and websites through which they sell lotions, serums, magnesium products, and other related products to purchasers in all 50 states.

69.     In connection with the sale and promotion of their products, Defendants engage in unauthorized use of and infringe upon the Modern Roots Trademark.

70.     Defendants have no rights in the Modern Roots Trademark.

71.     Defendants use the phrase "Modern Roots," which infringes and is confusingly similar to Plaintiffs' Modern Roots Trademark.

72.     Defendants have wrongfully and intentionally diverted sales from Modern Roots to MRL.

73.     Defendants have realized sales from customers who entered "Modern Roots" as search terms in Google, Bing, TikTok, Instagram, Facebook, and other internet search engines, advertising sites, and shopping sites.

74.     Consumers who have searched for "Modern Roots" using internet search engines, advertising sites, and shopping sites have been confused, deceived, and/or

misled into believing that Defendants' links will direct them to Modern Roots' website, a website affiliated with Modern Roots, and/or a website where they can purchase Modern Roots' products online.

75.     Consumers who have searched for "Modern Roots" using internet search engines, advertising sites, and shopping sites have been confused, deceived, and/or misled into believing that Defendants' advertising statements apply to, are affiliated with, and/or are endorsed by Plaintiffs' goods or website.

76.     As such, Defendants have misled, deceived, and/or confused the public at large and consumers seeking Modern Roots' products and website.

77.     Defendants began their use of "Modern Roots" or the confusingly similar derivative, "Modern Roots Life," long after Plaintiffs began using said marks.

78.     The products which Defendants advertise and sell in connection with their unauthorized use of the Modern Roots Trademark are highly related to the products sold by Modern Roots in connection with Modern Roots' use of the Modern Roots Trademark.

79.     The unauthorized use of the Modern Roots Trademark, or confusingly similar derivations thereof, enables Defendants to trade on and receive the benefit of good will in the Modern Roots Trademark which Plaintiffs have built up at great labor and expense over many years. This unauthorized use by Defendants also enables Defendants to gain acceptance for their own goods, not solely on the merits of those goods, but on the reputation and goodwill of Plaintiffs and their own trademarks.

80.     The unauthorized use of the Modern Roots Trademark, or confusingly similar derivations thereof, in the manner described above is likely to cause confusion and/or deceive customers and potential customers of the parties as to some affiliation, connection, or association of Defendants with Modern Roots, or as to the origin, sponsorship, or approval of the good of Defendants by Modern Roots.

81.     The unauthorized use of the Modern Roots Trademark, or confusingly similar derivations thereof, in the manner described above falsely designates the origin of the goods of Defendants, and falsely and misleadingly describes and represents facts with respect to Defendants and the goods of Defendants.

82.     The unauthorized use of the Modern Roots Trademark, or confusingly similar derivations thereof, in the manner described above removes from Plaintiffs the ability to control the nature and quality of the products provided under those marks and places the valuable reputation and goodwill of Plaintiffs in the hands of Defendants, and others, over whom Plaintiffs have no control.

83.     The unauthorized use of the Modern Roots Trademark, or confusingly similar derivations thereof, in the manner described above is false and misleading.

84.     Plaintiffs have, on numerous occasions, provided notice to Defendants of the improper use of the Modern Roots Trademark, or confusingly similar derivations thereof, and demanded that Defendant cease these unauthorized uses. Defendants have failed and refused to comply with Plaintiffs' rightful requests and demands.

85.     Defendants expect that consumers will rely on Defendants' false, deceptive, or misleading representations in purchasing products from Defendants.

86.     Consumers do rely, and have relied, on Defendants' false, deceptive, or misleading representations in purchasing products from Defendants and have therefore been misled and harmed by Defendants' tactics.

87.     Defendants engage in their ill-conceived sales strategies alleged herein with the knowledge and intent that Defendants conduct will injure, harm, deceive, confuse and mislead consumers and injure and harm Plaintiffs.

88.     Defendants' acts as described above have violated or injured the public's and consumers' ability to make accurate and informed purchasing decisions free from false, misleading, deceptive, and unfair representations and trade practices.

89.     Defendants' acts as described above have injured Plaintiffs by, *inter alia*, diverting customers from Plaintiffs.

90.     Defendants' false, deceptive, or misleading representations and trade practices described herein are directed to, and injure, the public at large and Minnesota consumers.

91.     Defendants' acts complained of herein were and continue to be committed willfully and intentionally.

92.     Plaintiffs have suffered and will continue to suffer monetary damages as a result of Defendants' wrongful acts.

93.     Defendants' activities have caused irreparable injury to Plaintiffs, Minnesota consumers, and the public at large and, unless enjoined by this Court, will continue to cause irreparable injury to Plaintiffs, Minnesota consumers, and the public at large. There is no adequate remedy at law for this injury.

## JURY DEMAND

94.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury on all claims and issues triable by jury.

## CAUSES OF ACTION

### COUNT 1:
### FEDERAL TRADEMARK INFRINGEMENT

95.     Plaintiffs repeat and reallege the allegations of all paragraphs in this Complaint as if fully set forth herein.

96.     The acts of Defendants complained of herein constitute infringement of Plaintiffs' federally registered mark in violation of 15 U.S.C. § 1114(1).

97.     Defendants conduct has been willful and in bad faith, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

### COUNT 2:
### FEDERAL UNFAIR COMPETITION

98.     Plaintiffs repeat and reallege the allegations of all paragraphs in this Complaint as if fully set forth herein.

99.     The acts of Defendants complained of herein constitute trademark infringement, unfair competition, and false designation of origin in violation of 15 U.S.C. § 1125(a).

### COUNT 3:
### FALSE ADVERTISING – 15 U.S.C. § 1125(a)

100.     Plaintiffs repeat and reallege the allegations of all paragraphs in this Complaint as if fully set forth herein.

101.    The acts of Defendants complained of herein constitute the making of false representations, claims, and statements in connection with goods distributed in interstate commerce in violation of 15 U.S.C. § 1125(a).

## COUNT 4:
## DECEPTIVE TRADE PRACTICES

102.    Plaintiffs repeat and reallege the allegations of all paragraphs in this Complaint as if fully set forth herein.

103.    The acts of Defendants complained of herein constitute deceptive trade practices in violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325(D).44 *et seq*.

## COUNT 5:
## UNLAWFUL TRADE PRACTICES

104.    Plaintiffs repeat and reallege the allegations of all paragraphs in this Complaint as if fully set forth herein.

105.    The acts of Defendants complained of herein constitute deceptive trade practices in violation of the Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.09 *et seq*.

## COUNT 6:
## FALSE STATEMENTS IN ADVERTISING

106.    Plaintiffs repeat and reallege the allegations of all paragraphs in this Complaint as if fully set forth herein.

107.    The acts of Defendants complained of herein constitute deceptive trade practices in violation of the Minnesota False Statement in Advertising Act, Minn. Stat. §

325F.67.

## COUNT 7:
## FALSE STATEMENTS IN ADVERTISING

108.    Plaintiffs repeat and reallege the allegations of all paragraphs in this Complaint as if fully set forth herein.

109.    The acts of Defendants complained of herein constitute deceptive trade practices in violation of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69 *et seq*.

## COUNT 8:
## CONSUMER FRAUD

110.    Plaintiffs repeat and reallege the allegations of all paragraphs in this Complaint as if fully set forth herein.

111.    The acts of Defendants complained of herein constitute deceptive trade practices in violation of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69 *et seq*.

## COUNT 9:
## FEDERAL CYBERPIRACY

112.    Plaintiffs repeat and reallege the allegations of all paragraphs in this Complaint as if fully set forth herein.

113.    The acts of Defendants complained of herein constitute cyberpiracy in violation of 15 U.S.C. § 1125(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1. A permanent injunction enjoining and restraining Defendants and their agents, employees, officers, servants, representatives, successors, assigns, and others in active concert or in participation with Defendants:

    a. From the use, in any manner whatsoever, the Modern Roots Trademark, or combinations or variations thereof;

    b. From the use, in any manner whatsoever, of the phrase "Modern Roots";

    c. From using any of the false and/or misleading advertising statements described above;

    d. To deliver up for destruction, or otherwise destroy, all advertising and promotional materials containing any use of the Modern Roots Trademark, or combinations or variations thereof, or any false or misleading statements; and

    e. With such injunction including a provision directing Defendants to file with the Court and serve on Plaintiffs within thirty (30) days following the issuance of the injunction a report, in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction.

2. Requiring a payment of damages or an accounting of profits made by Defendants as a result of the acts complained of herein;

3. Awarding damages equal to three times the amount suffered as provided by 15 U.S.C. § 1117, together with attorneys' fees;

4. Awarding pre-judgment interest at the maximum rate allowed by law;

5.    Awarding Plaintiffs their costs, disbursements, and attorneys' fees, together

which such other and further relief as this Court may deem just and equitable.

DATED:  <u>December 5, 2025</u>          **MADEL PA**

                                  By: <u>*s/ Cassandra B. Merrick*</u>
                                        Christopher W. Madel (#230297)
                                        Cassandra B. Merrick (#396372)
                                        800 Hennepin Avenue
                                        800 Pence Building
                                        Minneapolis, MN 55403
                                        T: 612-605-0630
                                        cmadel@madellaw.com
                                        cmerrick@madellaw.com

                                        *Attorneys for Plaintiffs*